Our second case is case number 252320. We'll hear from the petitioner. Good morning, my name is Megan Herndon of Murray Osorio. Thank you very much for having me here today. I represent petitioner Claudia Orellana and her children. May it please the court, petitioner Claudia Orellana's case presents a single issue. Whether the threats and harm she faced were on account of her familial relationship, the protected ground for asylum in this case. Petitioners do not ask this court to alter or expand case law, just to order the agency to apply existing jurisprudence. In the decision below, the agency made the same error this court has recognized before, an incorrect focus on why a persecutor harmed someone other than the applicant in question. And here, petitioner presented evidence so compelling that no reasonable adjudicator could fail to find the elements required for asylum. In this case, that her persecution was on account of her nuclear family-based particular social group. The agency made a legal error when it incorrectly focused on why her persecutor, Franklin Conjura, harmed her partner, Nwan Rogel, while evidence in the record compels the conclusion that one central reason, if not the only reason, Ms. Orellana was persecuted was her familial relationship with her partner Nwan, the father of her two children. So, counsel, if we agree with you, what should we do? Your Honor, if you agree, the recourse would be remand to the board. Okay. And would the board be able to consider issues other than nexus? I don't see why not, Your Honor. And in this regard, I think that respondents make too much of issues that are really not properly before the court in this case. Respondents' counterstatement of the issues is quite telling in this regard. Where it attempts to shift the focus to whether she was harmed in the past, because she was directly and clearly threatened by death by an aggressive armed— Well, the immigration judge said that you had not shown that you could—that you would be damaged if you—or persecuted if you relocated. The board didn't address that issue. I'm simply asking that issue and whether there's controversy or agy opinions about the family group as a particular social group. There's unwilling and unable. There are a number of issues that would be fair game if this case were to be vacated and sent back. Do you agree with that? I do, Your Honor. I would like to talk a little bit more about the nexus here. The agency denied asylum on the theory that the basis for Ms. Oriana's harm was a personal dispute. And there was a personal dispute here. But the existence of a personal dispute between a persecutor and some party other than the applicant does not negate the possibility of persecutory motive for harming the asylum applicant. Take, for example, what if the persecutor here, Franklin, was enraged by the same extramarital affair and instead of harming Ms. Oriana and her family, he misplaced his rage into a race-based rage and misdirected his anger at a person who shared the same race as the person who had the extramarital affair, but no other prior connection, no other prior involvement. I think that it's important that the court recognize that all of the five protected grounds in the statute share equal footing as a matter of statute, and that it seems like if you had a corollary between some of the other protected grounds, it would be even clearer that this is a family-based nexus, not something outside of the statute's reach. But you don't disagree that the dispute between Non and Mr. Kenora was a personal dispute? Not at all. I believe that is a personal dispute. It's simply that the agency misplaced the focus on why the applicant for asylum in question was harmed, not whether somewhere in the fact pattern of the case there was a personal dispute. I'm familiar with our cases and understand your argument and think there's some support for it. Does it matter, though, in deciding whether this was on account of being part of the nuclear family with the guy who had the affair? I've drawn a blank on the name. I'm sorry. Does the fact that the record appears to show that he was coming for three days, four times a day, and it was intense and you certainly mentioned the family when he did that, but does the fact that the record doesn't show continued threats? I'm not really trying to get this into this record, but if you have a case that's very short-lived in terms of the threats and persecution, when the claim against the partner was a personal matter, does that somehow inform whether this is really on account of being the nuclear relationship? It just seems like that short-lived dispute somehow informs the nexus question. I didn't see a case that said that, and maybe I'm wrong about that. Am I making any sense to you? Of course, Your Honor, and I think that there's different areas that the law would inform on this, but I believe that the really central issue here is that we have not just circumstantial evidence that there was a nuclear family-based harm. We have the direct testimony. I think in a lot of cases you have issues that are a bit more reliant on circumstantial evidence. Like in Cruz, the court found it compelling evidence of the on-account-of factor, the nexus factor that the threats were made in the family home, the center of the family. I think that a lot of the work that the asylum law does that you're getting at, Your Honor, works in areas other than nexus. So I think this goes back to your initial point. Yeah, there could be some other issues on remand, whether by the board or after further remand and fact-finding to the court, but when we're focused on the real sole issue that the board decided here, it is just compelling, and we have the direct, persuasive, credible testimony of Ms. Oriana that every time he would always threaten, he always said family. So kind of back to assuming we agree with you, in the past I think if you look at our cases, if we find a problem, we vacate, and as you acknowledge, other issues can be considered. I think, I'm not sure we have a case since, and I hope this doesn't come out of left field, but maybe it is a little bit, but the Supreme Court's recent white fly-in case, I don't know if you're familiar with it, and I'm not trying to catch a cold, but it deals with the conflict between, or tension between Chenery, which says we can't affirm an agency decision on the ground that it didn't base its decision on, with the APA's harmless error statute, and it kind of talks about how we can give some consideration to issue that the agency didn't decide if it was sufficiently clear. First of all, do you have a thought about whether any reason white lie-in wouldn't apply to immigration appeals? Well, with respect, Your Honor, I think in order to give most fulsome consideration to this, I would have to review and would offer to provide a 28-J letter. Yeah, the government hasn't raised it, so I'm not sure, I think it would be subject to forfeiture. I'm just trying to understand as, you know, first principles matter. If you're not prepared to talk about that, I totally respect that, but it seems like that would apply here at least. I think Chenery is really dispositive here. I think you have an issue where the immigration court had many, many issues that it could have addressed. The white lie-in clearly changes or, you know, informs how we do what would previously have been Chenery. So, I mean, as a general matter, white lie-in alters that analysis. Now, whether it does it or not, maybe you claim it doesn't apply here. Well, I'm not sure I can fully speak to that today, but I think especially with regards to protection claims, which this court has recognized derive from important statutory protections, we know also that respondents are what we call the applicants in immigration proceedings. So, applicants in immigration proceedings, they have a fundamental due process claim, a fundamental due process to a full hearing. Here, Ms. Oriana appeared without counsel. The judge developed the record. Could the judge have developed the record more if she wanted to get to certain other issues? Absolutely, but of course you have a court that has an overwhelming, you know, number of cases before it. The board had the opportunity to address multiple issues. It chose to address this one, and I believe that under Chenery, really, there really should be no option other than to remand. I think that the record below is insufficient for the court to rule on other issues. Let me ask you, so you, in your brief, cite the gang-related cases and the behavior there, and I guess kind of analogizes that to what's here, because there's no conflict between, there's no personal relationship between, I think it was Mr. Conjura and the claimant here, Ms. Oriana. So, how do you, I guess, how do you distinguish, is that what you would argue, right? Is that it's more like the gang-related cases in Hernandez than Toledo and Velazquez, which you said is the personal? Yes, this is more like, it's more like Hernandez-Vazquez and the other cases than Toledo-Vazquez and Velazquez. Those were, Velazquez and Toledo-Vazquez, there were very specific factual findings as to another central reason for the persecution. Here, where Ms. Oriana had no prior relationship with her persecutor, the evidence really is extremely compelling and very, very factually different from some of these other cases where there was another interaction. And as to the gang-related element, I know that the government, in its brief, noted that unlike in some of the other cases where this court had found nexus, the persecutor was a gang member. Here, there's no indication that the persecutor is a gang member, but I don't think that the statute makes any difference in that. So I think if we go back to the statutory language, as to who the persecutor is, it makes no difference whether the persecutor is a member of the government, is a gang member, or another private actor. Of course, many of the other sections of the statute may do some work into whether the person ultimately is entitled to relief, but I think that it's a bit of a red herring to suggest that an individual who is persecuted in the same manner by a gang member might deserve relief, and someone who is persecuted in the same manner by a non-gang member does not. I don't think the statute really calls for that distinction. Your Honors, I would just reiterate that this is a single-issue case, and that the agency misapplied the law. By misapplying the law, it abused its discretion. The record here, the facts, are extremely compelling and very different from many of the other cases, in that the immigration judge found no separate reason why there could be persecution here. In fact, the immigration judge found each time that Franklin Conjura was armed, and each time he threatened the family. That's at Joint Appendix 94. And on the credibility issue, the immigration judge also found your client credible, isn't that right? Yes, Your Honor, credible and persuasive, and there was some other language there that left no doubt as to the weight to be given to her testimony. And lest Your Honors have other questions, I will see the minute that I have left. Thank you, Counselor. Thank you. We'll now hear from the government. Good morning. Good morning. Kristen Jafrita for the government. Happy to be here. This case is about nexus. And in such a case, the applicant has the burden to establish three connected things. And that's harm, or the threat of harm, on the one hand, the protected ground, and the connection between the two, which is motive. And that proof of motive, which the Supreme Court in Elias Grias called critical, and in this case, the immigration judge made a factual finding, which this court has said that the nexus is a classic factual determination, that the motive for any harm that Ms. Orellana experienced or feared was a personal dispute, and not her particular social group family members of her former partner. And the board affirmed that finding, and that she did not establish that any harm she feared was a personal dispute. Ms. Orellana, she did not have any personal dispute with Mr. Conjar. Her husband is the one that had a personal dispute. She, and the factual finding that they made was she didn't have any dispute at all. In fact, she never spoke to Mr. Conjar. He never spoke to her at all. And he never threatened her at all. He never harmed her. He never threatened her. And the board, you can find those in the record, her testimony around the record at around 167, where he, all of the threats were made directly to her former partner. And during those threats, he said, he always said, this is a quote, he always said that because of him, his children were going to pay the price. She heard it, right? She heard it. But that's the sum total of the evidence of motive, which the government submits as far from compelling evidence of a threat that amounts to persecution. Well, that's, so if I could make sure I understand you. I mean, one issue would be whether that, whether you're, whether the petitioner has been persecuted. I mean, and that's an argument that it could be made. But the question, the only, the board didn't decide that. The board said there was no nexus. Let me just finish. And so, there may be a number of issues, but on nexus, our court's been quite expansive on how we view nexus. I've been on the other side of some of those cases, but our precedent's our precedent. And what it asks is whether the petitioner, ask us to look at whether the petitioner is persecuted as opposed to anyone else in society based on that family relationship. And whether it rises to persecution or not, how is what happened to the petitioner here not on account of her family relationship? There's a difference between identifying the protected ground, the family, and the harm, and the threat of harm. And the immigration judge has to look at what the evidence she's giving and discern what the motive is. And this is what her testimony was, which I just quoted to you. So, in there, he has to find what is her proof of what the motive is. And that proof was that he never spoke to me, he pushed me once, and this is what he said to my partner. So she has identified the protected ground, family. He made these threats to my partner. He mentioned family. So, what is the motive? And they said, it's the personal dispute. So is it incidental, subordinate, tangential, this family relationship? And that is what the immigration judge found. So is there compelling evidence that her family relationship was a central motive there? But what is the motive other than her family relationship? I mean, I'm really struggling to— It was the personal dispute. Well, the personal dispute, as your colleague on the other side conceded, is between the two men. But the motive for— There was no motive. The motive. It wasn't her at all. You'd better finish asking her a question that might help you answer it better. So, I think there's agreement between you and counsel for the petitioner that there was a personal dispute between the two men. The argument is that the motive for the threats against the petitioner were the relationship between herself and the father of her children. And that is a familial relationship, is it not? There's a familial relationship between her and the father of her children, yes. And the argument is that the threat was because of the relationship. She was being threatened because the father of her children had— that somebody had taken offense at something the father of her children had done. And so the threats and her fear of persecution is on the basis, as her argument goes, of her familial relationship. To the extent that she was included in those threats to the family members, if that— So why is that not a sufficient nexus to her familial relationship? Well, for two reasons. I mean, this court has a line of authority, as does every other circuit, that says these kinds of disputes fall entirely outside of the rubric of what constitutes persecution. What cases are those? Velazquez and Toledo-Vazquez. It says these personal disputes or ordinary crimes are not persecution. I know a little bit about Toledo-Vazquez. I wrote it. And there, that was a situation where a sister assisted her sister, who was being abused, treated horribly by the sister's husband. And the evidence was that every time she was persecuted, it was because she was helping her sister. And the evidence was that people other than her family members also helped her sister, and they were also persecuted. And so it seems like, for sure, we have cases where we say that a central reason was not the family relationship. But it seems—but comparing that case to this case, there was no evidence that I'm aware of that the man threatened anyone other than the partner and his family members. Well, and in Velazquez, where it was this personal dispute between the mother-in-law and the woman over the custody dispute. Yeah. But those seem like those are inter-familial-type disputes. That she doesn't—this here, she doesn't have a dispute with—you would agree, she has no dispute with— personal dispute herself with Corianne. It's her husband that has a dispute with him. And he is not a member of their family. But they're also like two families, you know. They are connected in Velazquez, the mother-in-law. And in this case, it's also two families. But they are the same. They are more alike than the gang cases in that it's just a purely personal matter with, you know, no connection to any sort of state action. Because this circuit also has case law, as does every other circuit, that says inherent in persecution is state action or action by private parties that the state is unwilling or unable to control. Sure, sure. And that may be a great issue for you. But that's not what the decision was. I mean, I think you've got a number of issues that, from my review, appear strong. I mean, the unwilling and unable issue, I mean, I think that looks very strong. I think the threat of future persecution when this lasted for three or four days and, you know, there was no continued persecution afterwards. I mean, there are a number of grounds. But when we get a decision from the board that's talking about nexus, that's, you know, unless my white lion, you know, kind of argument is something to think about, which you haven't briefed then, and I don't blame you for that. That's very new. I hope that's not a criticism. You know, we only got one issue here, and we got, you know, very, you know, a lot of cases that seem to make your argument difficult to square with our precedent. But, sure. But in, you know, even in Hernandez-Avalos, it says that not every case that involves a family is going to involve that nexus. And she does have to prove that it was a central reason and not a subordinate or incidental or tangential reason. And just because she's related to this, I mean, if there's, you know, there's no need to even look at the record and look at, you know, what went on. If every time someone, you know, you have a crazy neighbor that says, you know, if your kid keeps beating up my kid in school and I'm going to kill you and him, then that's a matter for international refugee protection. Or if, you know, if your dog keeps leaving itself on my lawn and I'm going to kill your whole family, that's a matter for. It seems that, you know, those are personal matters and not a matter for asylum and removal. Is it your position then that if part of the persecutor's motive is a personal dispute, then the asylum claim necessarily fails? Is that your argument? I think it depends on what the record says. I think you need to examine the record and look at, you know, what the actual evidence is and to, like, apply your nexus test in a way that's consistent with Supreme Court precedent and with the statute and whether it's incidental, you know, subordinate, tangential, and your own precedent in Vasquez to see whether it is a personal dispute in a way that makes sense, that doesn't lead to results that are, you know, unnatural and absurd. And like the examples that I just gave, to whether someone's having an illicit sexual affair, that is, you know, obviously something that every human interaction is not a matter for the asylum statute. Counsel, I mean, that's, and I think I understand where you're going with that, but you said apply our precedent. And it seems to me like you're asking us to go in bank and refine our precedent, you know, because if our precedent says that a familial relationship is a central reason for persecution, if that relationship is the reason the petitioner is persecuted as opposed to other members of society, it's enough. And that rule is very broad and may lead to results like the one you're talking about, I think. And so it seems to me like your argument is with our rule, and, you know, that may be a good argument, but it's not an argument that the three of us can do anything about. You agree with that? I don't think you have to. I think in my brief I showed a way that you could rule in this case along the lines of Vasquez and Toledo Vasquez that distinguishes Hernandez-Avalos and Salgado-Sousa, that follows those other cases and personal dispute on those types of cases as opposed to Hernandez-Avalos. And I think you can in this case because of the record and the scant evidence in the record of motive, the actual evidence that, you know, the testimony is about two paragraphs long, and that there isn't compelling evidence in the record of motives. And where there are two, you know, where the record plausibly supports, you know, two results, and the one the agency chooses and the one petition advances defer to the agency's construction or choice in that regard. Do you have a position on the questions I asked your colleague about White Lion and whether that allows us to deny a petition from an immigration-related agency if the standard for that case is met? I confess I haven't read White Lion, and just the same, I would submit a 28-J letter. But I would say that, you know, just the harmless error principles would apply because there's plenty of reasons to deny relief in this case, frankly. Well, the good with the White Lion is that it does that. The bad is they denied it because it had been forfeited. And so I'm not, again, critical of that because it's new. But anyway, I appreciate that. Thank you very much. Hold on a second. Any other questions? Oh, no. Thank you, counsel. I would also just say briefly that this is probably going to be my last argument on behalf of DOJ. And so I would just thank counsel in the court and say that it's been a great honor to argue in the courts of the United States. Thank you. Appreciate your work and service. Your Honors, the applicant for asylum, this petitioner, Ms. Oriana, provided what the immigration judge described as credible, responsive, candid, plausible, and detailed testimony. That's at Joint Appendix 75 to 76. Finding that Ms. Oriana was harmed as a result of a personal dispute lacked substantial evidence. It failed to consider the court's jurisprudence on the nexus from this court's case. And there is no occasion to depart from it here. My colleague's example of a neighbor's dog does not consider the other prongs of the asylum statute. And that explains why those facts themselves might fall short and seem to not qualify. I would submit to this court that if Person A goes up to Person B and through credible, responsive, candid, plausible, and detailed evidence says, I am going to kill your family for what you did, that is family-based nexus under this court's jurisprudence. So would you agree that under the examples your colleague mentioned that nexus would be established? Is that your position? Under, I'm sorry, Your Honor, which examples? The two hypotheticals that she said affirming would lead to kind of the things she said were kind of a neighbor who's doing bizarre stuff or a dog who's doing bizarre stuff. You said there are other factors that would be considered. Fair enough. But is your position that on nexus alone that would satisfy the law? It could. The dog example I don't think has sufficient facts for me to comment. But take, for example, on the two neighbors. What if the two neighbors were the Hatfields and the McCoys and you had record evidence of a family-based dispute and really no other issue, no personal dispute other than the fact that these two families were in a long feud? Well, I think that's her argument, that we don't have a Hatfield and McCoy sort of situation. We've got an isolated incident that led to these threats. And it sounds like your argument would be in those hypotheticals you may have a problem with other issues, but you don't have a problem with nexus. I think you don't necessarily have a problem with nexus. If the evidence is person A is going to kill person B in one central reason because of their family nexus, you have nexus. Thank you, Your Honors. Thank you. Thanks to both counsel. And we'll come down with recounsel and take this matter under advisement and move to our final case.
judges: A. Marvin Quattlebaum Jr., DeAndrea Gist Benjamin, Nicole G. Berner